Good morning, Conrad Peterman for Appellant and Petitioner. Can everybody speak up, including you? Excuse me? Could you please speak up? Yes, thank you. Thank you. I'm sorry, but the acoustics in this room are not fabulous, and I do want to hear what you have to say. I'm sorry, Your Honor, I need to ask the Court to speak up also. I said, there you go. The acoustics in this room are not fabulous. Thank you. My hearing impaired. I'm wired, but it isn't adequate, apparently. My client, Mr. McShane, is a 50-year-old schizophrenic and probably should be in some assisted living facility with somebody making sure that he took his medications. But instead, he's serving a life plus 40-year sentence in a California state prison. So that's the backdrop of where we are. And a significant factor for where he is is the fact that he was, as two district courts have found, he was represented by ineffective assistance to counsel, someone who was ill-prepared, ill-trained to represent him. Let's start with the fact that the certified question in this case is the prejudice question, right? Yes. But your brief doesn't talk about that. You don't brief that issue. I didn't brief it. I obviously didn't do a good job of it. You didn't even mention it. My intent is that there are a number of factors that weren't considered by the district court the second time around in its resolution that the state court was not objectively reasonable if it found no prejudice. And amongst those, and a significant part of those, is the process itself, the process that the state court engaged in. They denied funding, the decision, they denied an evidentiary hearing, they provide no reasoned opinion, and they did all of this in four days. And this was after this court had tried the case 18 months prior. So that is, I think, a significant factor in the consideration of the process that the state provided. In addition, the structure of the appellate review was insubstantial. We have postcard denials in effect by both the appellate court and the Supreme Court. So we really have no evidence and plenty of indicia that the process was superficial in the state court. And you couple that with other factors that were before the district court. And that is that the jury was not provided with any expert explanation for how someone could have been so out of touch with reality. They never learned about Mr. McShane's extensive history of delusions. They never learned about the role his delusions played in his perceptions and actions on that particular night. They never learned that his actions were consistent with his delusional state. The magistrate judge's ultimate conclusion was that there was no connection between the material submitted, or what could have been submitted that was in the state court record, and his situation at the time of the crime. Is that true? I thought that Dr. Arnn specifically said that he had... May I finish? I just want to check something. Dr. Arnn at some point said that he had delusions and that his notion that he thought that he would shoot the guy and he wouldn't fall down was consistent with those delusions. Was that in the record before the state court? Yes. Okay, so this is inaccurate, what's said here that there was no connection. I mean, obviously no psychiatrist is going to be there the day of the crime, so he can't specifically say what was going on the day of the crime. And indeed, and if you asked an expert that, the expert would really be doing the juror's job, because there would be speculation, albeit based upon testing and social history, that what the client did was consistent with one who was operating in a delusional state. But no expert probably would even be permitted to testify that he wasn't. What is your understanding of the prior Ninth Circuit short memorandum disposition as it affects this case? I mean, did it say that there can't be any reliance on the evidentiary hearing or did it say that there can't be any reliance on the evidentiary hearing for the purpose of deciding the unreasonableness under pinholster, but if you then independently decided it was unreasonable under pinholster, you could use the evidentiary hearing? Or it didn't say that, but it just didn't preclude that? Or which one wasn't? What did it say? In defense of the Ninth Circuit, and in my own defense, we were running along nicely with findings in our favor in the district court, and everybody, well, on our side it was of one mind that there was ineffective assistance to counsel, and yes, it was prejudicial. And then along came Richter and pinholster, you know, right after we all thought we had contentedly, you know, we would resolve all of this. And so I think people were just up in air about what was the proper thing to do. I think, frankly, in retrospect, the implication of what the Ninth Circuit did was, district court judge, we don't believe that you decided this. Let me back up. We'd had the evidentiary hearing. Then we had these new U.S. Supreme Court cases. And then we briefed and discussed the impact of pinholster, to the extent that anybody really had their head around it yet. And the judge concluded that, then went on to do his report and recommendation. So the assumption should have been that, you know, this is a reasonable jurist. He also read the United States Supreme Court decisions, and so he knew that he couldn't rely on new evidence that had come in, and he had made his decision based upon what the state court, on the rationality of what the state court did. But nonetheless, we have law of the case here. So what I'm asking is, what's the law of the case? I understand what you're saying, but we have, there was a decision made by the Ninth Circuit. Yes. So the question is, where does that leave us now? With regard to whether, as I understand it, the district, the, what the magistrate, if we, for example, thought that the magistrate judge, either the magistrate judge was wrong in finding that there wasn't prejudice, or that there was something else wrong with what the state court had done so that 2254 didn't apply, then where does that leave the evidentiary hearing? Then that's when the evidentiary, I mean, in a case that came through today, long after Ben Ulster and Richter, then you'd go back and you'd have your evidentiary hearing to see if the petitioner could actually prove up all the things. But you already had the evidentiary hearing. Exactly. So what I'm saying is that we don't need to do that. We've done that. We know that the petitioner's claims can be satisfied because they haven't satisfied already in the federal district court. So I think the place we go is, is this court writes an order, I'd be happy to draft it. That the state has 90 days to retry this guy. Okay, do you want to save time? Yeah, I'll try to make good use out of it. So the jury never heard about the petitioner's delusions. They never heard about the role of his delusions. And they never heard that they were consistent with involuntary manslaughter. And they were never explained. There was never any explanation given to them about what involuntary manslaughter was all about. And that it was actually a defense. I'm guessing that your opponent's going to now stand up and say you never argued any of this in your briefs. And what do we do about that? I'm sorry, Your Honor? I'm guessing that the state is now going to stand up as it did in its brief and say you never argued anything in your brief having to do with what you're now talking about. I.e., why there was actually prejudice. So what do we do with that? It comes as no surprise. And it was certainly amongst the discussion in the district court. And it's my, as adolescents would say, it's my bad for not having brought it out better or maybe at all in the briefing. But once again, it's no surprise that it's part of the millions. But that was the certified question is the problem. What wasn't a certified question is whether there was a faulty fact-finding proceeding in the state court. Yes. That wasn't the certified question. The certified question was whether there was prejudice on the state court record. Well, isn't the question whether the state court reasonably reached the conclusion in providing the denial. We don't know whether they denied it on the acts of trial counsel or whether it was resolved on the prejudice basis. So I'll speculate it. But the first district court has resolved both of those for us. And the second time around, the second district court also reaches the same conclusion on the on the acts of trial counsel. And so we're we're at odds is on on whether there was an adequate basis for finding prejudice. And there's and there's I cited a couple of cases in the letter that I provided the court. The only one I'd like to point to for this point is is put versus Neal. And it's just an it's an illustration of the import of paranoid schizophrenia when when your client's mental state is an issue. And another case that I cited was about the versus Vasquez. And the AG cited be more versus Chappelle. And the value of those two is that is that a federal appellate court is not an outlier. If it if it finds that that prejudice was was wrongfully decided in the state court, because both of those cases are cases where federal appellate courts concluded that the state court had unreasonably resolved that issue. OK, your time is up. Thank you. Oh, worth it. Good morning, Your Honors. Deputy Attorney General Jennifer Javits for respondent in this matter. As the court has initially pointed out, it would be the state's position that counsel has waived the certified issue in this appeal. And to that extent, if the court wanted to dismiss the case on that ground, it certainly could rightfully do so. Alternatively, it's with respect to the certified issue. We think the record is very clear in this case that the district court correctly determined that there was no prejudice in this case. Because in the court's word, excuse me, in the court's words, the evidence fell far short of establishing prejudice. Because I ask you two questions. First of all, is that subject to a difference? That question. Yes. Did the trial. Was it decided that way in the state courts? Yes, absolutely. The trial court in state had this very short opinion where it basically said this was all hearsay. Right. Isn't what happened. I believe that is language from the superior part of the language. What did they say about prejudice? They don't say anything about prejudice. So therefore, why are we applying it for deference to the prejudice question? Because as the district court noted in its report and recommendation in denying the Strickland claim for failure to state a prima facie case, while we don't know on which prong they decided. But we do know because we know what they said. Well, we know that. Yes, we know that they rejected potentially both prongs. But the district court in this case said that, therefore, when just saying prima facie case, that we have to look to what reasonings. The district court said that they didn't give further explanation for denying the claim as failure to state a prima facie case. Also, what the district court, what the trial court actually said is wrong. Right. In other words, the fact that it was hearsay was totally irrelevant because the question wasn't whether it was true. The question was whether the attorney should have discovered it. I wouldn't say that it's wrong, but I certainly wouldn't say that it speaks to the final holding of the court, was that Mr. McShane failed to state a prima facie case to support his claim. Therefore, they were rejecting the claim on the merits. So the district court in this case was correct in determining with respect to the prejudice prong, which is the certified issue before this court, that the record in this case, there is no evidence to show that Mr. McShane could not form the requisite intent in this order, excuse me, on the night of the murder. And we would ask the court in this case to follow its logic and reasoning when it decided a similar issue recently in Beemore, where this case, as in that case, the record falls short of showing that the defendant in that case could not, in this case, excuse me, form the requisite intent. Well, it was also not accurate to say that there was no connection drawn between his delusions and what happened the night of the murder. I mean, there was some connection made in Dr. Arndt's report, wasn't there? I don't have, unfortunately, the report in front of me, but I would disagree with that finding. I think as the district court found out that in reading that argument, excuse me, in reading that declaration, he made some general assessments about Mr. McShane's mental history, but he never said that his delusions were consistent with his testimony that he didn't think no one was going to actually fall down and die. Now, I mean, I don't know how he could do better than that. That's the question. I mean, how would a psychiatrist or a psychologist say more than that about what happened the night of a murder? He didn't see him the night of the murder or shortly thereafter, so what was he supposed to do? I think he needed more than that. He needed to present more definitive evidence showing that he couldn't form the requisite intent to kill that night. And based on the evidence before the court and based on the fact… I mean, you would want evidence going back to that night, like how he was behaving, but the psychiatrist wasn't there. What's he going to know? Exactly, and that's Mr. McShane's problem. That's always true, so it can never happen. Is that what you're saying? No, what he would need to have somebody say or himself say is that on the night of the shooting, I was delusional, I didn't know what I was doing. Pink elephant told me. He essentially said the second about himself, but that didn't persuade anybody. We would disagree with that interpretation of the facts, Your Honor, and in this particular case, especially… Henson was delusional, but he said, I thought I'd shoot him and he'd get back up again. And here's the problem with that is the fact that just as this court decided in Beemore is that even if, perhaps as the court interprets Dr. Arden's declaration, could have been introduced at trial, that would not have been enough to overcome the overwhelming evidence of Mr. McShane's express and implied malice in going after these kids. He armed himself with a shotgun. You don't think it would have made a big difference to a jury to know that this guy had been in institutions several different times, had had delusions, whether he had them then or not, had a psychiatrist saying that the delusions he had were consistent with what he was testifying to, and that he, I can't remember now whether he'd been diagnosed as a schizophrenic before or after trial, but at least shortly after trial was diagnosed as a schizophrenic. And that wouldn't have made any difference to the jury in terms of evaluating what he was saying. I mean, without it, you think, well, this guy's just, you know, making it all up, crazy. I mean, not a crazy person. He's expecting us to believe something that's impossible. But if you had, this is rather extensive psychiatric background this guy had, wasn't it? The problem is that as extensive as his mental history is, once again, he's not made the connection to show that he wasn't able to form the requisite intent to kill on the night of the shooting. He chased these three teenagers down for over an hour. He armed himself with a shotgun. He exacted his purpose. He had three chances to abandon going after these kids. Based on that overwhelming evidence of premeditation and calculated decisions, even if he could have gotten any of this evidence introduced at trial that he's presented in support of his habeas petitions, it would not have overcome his conduct of malice in going after these kids that night. Well, at least the first magistrate judge didn't think so, and district judge. The problem with the prior magistrate judge's analysis. I mean, this is, from what I could tell reading the transcript, the first opinion, there wasn't that much that came up in the evidentiary hearing that was different than what had been before the state court. What was it that was the smoking gun in the evidentiary hearing that changed anything? Nothing as far as the people are concerned. And it should have been a situation where the first time around, no prejudice should have been found for the same reason. Really, the evidentiary hearing wasn't just reinforced what was already in the record. Potentially, yes. It doesn't help Mr. McShane at this point to the court. Or at any point. But all that means is that whatever the record is not sparse, as it often is. I mean, it's a pretty full record now, even before the state court. It has a full record, unfortunately. It doesn't help Mr. McShane based on the fact that... But you agree that the evidentiary hearing really doesn't have much to do with it. Exactly. So at this point, Your Honors, we would just close with asking you to affirm the district court's ruling and deny the petition. My time is almost up. If the court doesn't have any more questions, we would submit on the briefing. And no questions here. Thank you, Your Honors. Thank you. Petitioner has ten seconds. We'll give him one minute. You're out of time. The only point I wanted to make was that in the competency process, he was declared incompetent to stand trial. And so in that medical history there, he's found to be schizophrenic. So we have a finding of schizophrenia before trial. Thank you. Thank you both. McShane v. Kate is submitted, and we will take a short break. Thank you.
judges: Gould, Berzon, Steeh